UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HUSSEIN "JOSEPH" CHAMSEDDINE, RAMI SALEH, BRANDON LEE ADAM, and CHEKRI "SAM" BAKRO, <br><br> PLAINTIFFS, <br><br> V. <br><br> INTERNATIONAL HOUSE OF PANCAKES, LLC and ANTHRAPER INVESTMENTS, INC., <br><br> DEFENDANTS. | **CASE NO.** <br><br> **(JURY TRIAL DEMANDED)** |

## ORIGINAL COMPLAINT

Plaintiffs Hussein "Joseph" Chamseddine ("Chamseddine"), Rami Saleh ("Saleh"), Chekri "Sam" Bakro ("Bakro"), and Brandon Lee Adam ("Adam," and, collectively with Chamseddine, Saleh, and Bakro, "Plaintiffs"), by and through their attorneys, bring this action against International House of Pancakes, LLC, Anthraper Investments, Inc., and their related subsidiaries, successors, and assigns ("Defendants") for damages and other legal and equitable relief from Defendants' violation(s) of the laws proscribing discrimination based on national origin and religion, stating the following as Plaintiffs' claims.

## INTRODUCTION

1.  This is an action brought by Plaintiffs seeking damages from Defendants for acts of intentional discrimination based on national origin and religion, as well as for acts of retaliation,

because Plaintiffs engaged in protected activity. Defendants' acts of discrimination are in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq*. and the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq*. (collectively, "Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"); Tex. Labor Code § 21.051; and Tex. Labor Code § 21.055.

2.      Plaintiffs demand a trial by jury.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 42 U.S.C. § 2000e, *et seq*., as amended; 42 U.S.C. § 1981 *et seq*., as amended; and  42 U.S.C. § 1981a *et seq*., as amended.

4.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), inasmuch as this judicial district lies in a State in which the unlawful employment practices occurred.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that the Defendants maintain offices, conduct business, and reside in this district, and a substantial portion of the acts that make up the basis of the complaint occurred within this judicial district.

## PARTIES

5.      Plaintiff Hussein "Joseph" Chamseddine is a person who has been aggrieved by Defendants' actions.  He is and has been, at all relevant times, of Arab ethnic origin and the

Muslim faith, a male citizen of the United States of America, and a resident of the State of Texas.

6.    Plaintiff Rami Saleh is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, of Arab ethnic origin and the Muslim faith, a male citizen of the United States of America, and a resident of the State of Texas.

7.    Plaintiff Chekri "Sam" Bakro is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, of Arab ethnic origin and the Muslim faith, a male citizen of the United States of America, and a resident of the State of Texas.

8.    Plaintiff Brandon Lee Adam is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, of Arab ethnic origin and the Muslim faith, a male citizen of the United States of America, and a resident of the State of Texas.

9.    Upon information and belief, Defendant International House of Pancakes, LLC ("IHOP") is a wholly-owned subsidiary of DineEquity, Inc. IHOP restaurants are franchised and operated by International House of Pancakes, LLC. Its principal place of business is located at 450 Brand Boulevard, Glendale, CA 91203-4415. As of December 31, 2011, there were 1,550 IHOP restaurants located in 50 U.S. states and the District of Columbia, Canada, Guatemala, Mexico, Puerto Rico and the U.S. Virgin Islands. Within a 25 mile radius of the Dallas, Texas area, there are approximately thirty-six IHOP franchises, including the four owned by Defendant Anthraper Investments, Inc.

10.   Upon information and belief, Defendant Anthraper Investments, Inc. ("Anthraper Investments") is a management and investment company that owns and operates IHOP restaurant franchises in Arlington, Texas; Forth Worth, Texas; Plano, Texas; and Burleson, Texas. Anthraper Investments also owns and operates several IHOP restaurants in Ohio. Anthraper

Investments' principal place of business is located at 270 N. Denton Tap Road, Suite 215, Coppell, Texas 75019.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

11. Plaintiffs who have herein alleged claims pursuant to Title VII have timely filed complaints of discrimination with the EEOC.

12. Plaintiffs who have herein alleged claims pursuant to Title VII have requested Notice of Right to Sue letters prior to the filing of this Complaint, and received their Notice of Right to Sue letters on April 4, 2012.

13. On January 6, 2012, the EEOC issued a Determination as to the merits of Plaintiff Bakro's and Plaintiff Adam's charges filed under Title VII, which stated "[b]ased upon the evidence, [the EEOC has] determined there is reasonable cause to believe that Charging Part[ies] [Bakro and Adam] and Arabs were discriminatorily harassed and discharged based on [their] national origin-Arab."  The Determination letters are attached hereto as "Exhibit A" and "Exhibit B."

## STATEMENT OF FACTS

14. The Plaintiffs, all of Arab ethnic origin and the Muslim faith, were all long-term employees hired as General Managers (or higher positions) at IHOP franchises in Texas that were owned by John Anthraper, the President and Chief Operating Officer of Anthraper Investments.  The Plaintiffs performed their jobs without incident, year after year.  In or around December 2009/January 2010, John Anthraper's son, Alex Anthraper—who was primarily involved in running Anthraper Investments' Ohio IHOP restaurants—moved to Texas and took over as owner of the IHOP franchises in Texas.  Once he took over, Alex Anthraper, who is an Indian Christian, put increased pressure and scrutiny on the managers who were of Arab-ethnic

origin and the Muslim faith. Alex Anthraper fired Plaintiff Chamseddine, who was a District Manager, and hired a new Caucasian Christian District Manager, Larry Hawker ("Hawker"), who openly made offensive comments towards the Plaintiffs due to their ethnicity and religion.

15.     Upon information and belief, Anthraper Investments must abide by IHOP policies and procedures and regularly provides feedback, reports, and predictions to IHOP. IHOP exercises centralized control of labor relations, interrelates the operations of its franchisees, has some common management, and exercises control of the working conditions of Anthraper Investments' employees. For example, but not by way of limitation, IHOP's policies concerning non-discrimination and diversity apply to Anthraper Investments. Accordingly, upon information and belief, Defendants are joint employers of Plaintiffs.

16.     In a period of ten months after Alex Anthraper took over Anthraper Investment's Texas franchises, each of the Plaintiffs was unjustifiably terminated one by one, starting with Plaintiff Chamseddine in March of 2010, then Plaintiff Saleh on April 14, 2010, then Plaintiff Adam on April 30, 2010, and finally Plaintiff Bakro on or around October 23, 2010. Plaintiffs were all unjustifiably terminated because of their national origin and/or religious beliefs. All Plaintiffs were replaced by White, non-Muslim employees.

17.     Defendants maintain a progressive discipline system, which involves: first, a verbal warning with a witness that the employee must acknowledge in writing; second, a written warning that the employee must acknowledge in writing; third, a second written warning; and finally, termination.

18.     In practice, however, none of the terminations of the Plaintiffs resulted from any procedures set forth in the progressive discipline system. Moreover, Caucasian, non-Muslim comparators, who had received some level of progressive discipline, were not terminated.

*Hussein "Joseph" Chamseddine*

19.     Plaintiff Chamseddine was hired by John Anthraper at IHOP on or around July 21, 1998 and was promoted to District Manager in or around 2003.  As District Manager, Chamseddine's responsibilities included overseeing four IHOP locations: IHOP #1911 in Burleson, Texas; IHOP #1465 in Forth Worth, Texas; IHOP #1432 in Arlington, Texas; and IHOP #1472 in Plano, Texas.  Chamseddine was also responsible for maintaining operations, human resources, technical support and directing managers and employees for the IHOP stores under his umbrella.

20.     Prior to Alex Anthraper taking over management in late 2009/early 2010, Chamseddine heard John Anthraper make numerous comments suggesting that he (John Anthraper) disliked individuals of Arab ethnic origin.  For example, in and around August of 2007, some customers complained about one of the managers who was an Arab male.  John Anthraper said to Chamseddine, "The whole thing here is because you hire those fucking Arab friends of yours." Chamseddine was offended and shocked by this comment and did not have a response.

21.     In and around 2007, John Anthraper made another comment to Chamseddine.  John Anthraper had been traveling with his wife during Ramadan, and when he returned he told Chamseddine how he had seen "all these Muslims waiting to break the fast and it was like dogs waiting for their meal."

22.     To add to the clear racial hostility that Chamseddine was experiencing, on each anniversary of September 11th, John Anthraper would e-mail Chamseddine telling him to have his managers of Arab ethnic origin "lay low."

23.     The work environment became more hostile in and around December 2009/January 2010 when John Anthraper's son, Alex Anthraper, moved from Ohio to Texas and took over the Texas

**ORIGINAL COMPLAINT**

franchises. Alex Anthraper started putting pressure on all the managers of Arab ethnic origin. Alex Anthraper would send conflicting e-mails to the managers. Anthraper was targeting the managers of Arab ethnic origin and Muslim faith and trying to make their jobs more difficult in order to manage them out of the company.

24.  On or around March 8, 2010, Chamseddine was called by John Anthraper and asked when he would be at the office. Plaintiff was finishing up work at one of the IHOP restaurants and said he would be at the office in an hour and a half. John Anthraper said he would see him there. When Chamseddine arrived at the office, John Anthraper was there and told Chamseddine that Alex Anthraper wanted Chamseddine terminated. John Anthraper told Chamseddine that he (John Anthraper) had to "choose between [Chamseddine] and his son." Two weeks later, Chamseddine learned that he was replaced by a Caucasian male, Larry Hawker ("Hawker").

25.  Chamseddine served IHOP for almost twelve years, worked six to seven days a week, and took only three vacations in the span of over a decade. He did not have any performance issues, and in fact, just one month prior to his termination, he was commended by representatives of IHOP for his presentation on an annual sales increase plan.

26.  Defendants' discriminatory animus towards Chamseddine was a pretext for Chamseddine's termination.

27.  Once Hawker became District Manager, he held a meeting with all the General Managers, Assistant Managers, and Managers-in-Training—about twenty managers in total—from the four Texas IHOP locations in or around March of 2010. During this meeting, Hawker made hostile comments towards the Muslim-Arab managers. Hawker said, "Arab men treat women poorly and with disrespect, we're going to let these people go and have new faces

coming in." Another meeting was held in or around May of 2010, where Hawker made the same such comments about individuals of Arab ethnic origin.

28. Chamseddine's termination was based on his national origin and religion.

*Rami Saleh*

29. Plaintiff Saleh was hired by Defendants in or around May of 2005 as an Assistant Manager and remained in this position until his promotion to General Manager in or around 2008. When Saleh was promoted to General Manager, he was transferred to IHOP franchise #1432 located in Arlington, Texas.

30. Saleh was present during the March 2010 manager meeting where District Manager Hawker made hostile comments towards the Arab managers. Mr. Hawker said, "Arab men treat women poorly and with disrespect, we're going to let these people go and have new faces coming in."

31. Saleh never received any verbal or written warnings regarding his job performance. In fact, Saleh had continually received positive evaluations from his supervisors prior to his termination in April 2010.

32. On or about April 14, 2010, Saleh reported to work at 6:00 a.m. and was confronted by Hawker. Hawker informed Saleh that he was terminated because of an alleged incident with a female employee. Saleh had counseled this employee over a mistake that she had made. The incident was witnessed by another employee and memorialized in writing. Rather than adhere to their own progressive discipline policy, Defendants terminated Saleh without any verbal or written warning regarding this incident.

33. Defendants' discriminatory animus towards Saleh was a pretext for Saleh's termination.

34. Saleh's termination was based on his national origin and religion.

**ORIGINAL COMPLAINT**

8

*Brandon Lee Adam*

35.     Plaintiff Adam was hired by John Anthraper and began his employment as a Manager with IHOP #1465 on or around October 15, 2005.  He was then transferred to IHOP #1472, in Plano, Texas in or around April or May of 2005.

36.     Adam was present during the March 2010 manager meetings where Hawker made hostile comments towards the Arab managers.  Hawker said, "Arab men treat women poorly and with disrespect, we're going to let these people go and have new faces coming in."

37.     Adam never received any verbal or written warnings regarding his job performance.  In fact, Adam had continually received positive evaluations from his supervisors prior to his termination in April 2010.

38.     Adam was terminated on April 30, 2010.  He was told that the reason he was being terminated was for "office use" and "computer use" over an extended period of several hours in a single shift.  The nature of Adam's job was such that he would walk the store constantly in executing his duties.  Additionally, because Adam worked the night shift, it was his responsibility to run over a dozen reports on his work computer, which required walking in and out of the office to check on the reports and provide user input on the computer.  As part of his job, Adam was required to spend some time in the office and on the computer; however, given his other responsibilities, it would not be feasible for him to spend extended periods of time in the office or on the computer.

39.     On the night in question, Adam took possession of his personal computer at work after a friend of his dropped it off.  The computer was previously broken, and Adam's friend had attempted to fix it.  Adam opened the computer to see if it was fixed, and when the computer

**ORIGINAL COMPLAINT**

failed to boot successfully, Adam closed the lid, set the computer aside, and continued to work on the office computer to file standard reports.

40. Rather than adhere to their own progressive discipline policy, Defendants terminated Plaintiff Adam without any verbal or written warning regarding this incident.

41. Defendants' discriminatory animus towards Adam was a pretext for Adam's termination.

42. Adam's termination was based on his national origin and religion.

*Chekri "Sam" Bakro*

43. Plaintiff Bakro is a Muslim male of Arab ethnic origin. He began his employment with IHOP in or around 1986 as a cook. Bakro then held numerous management positions with IHOP over several years. In or around March of 2003, Bakro was hired by John Anthraper as a General Manager at IHOP #1465 in Fort Worth, Texas. He was terminated on or about October 23, 2010.

44. Bakro was present during the March 2010 and May 2010 manager meetings where Hawker made hostile comments towards the Arab managers. During these meetings, Hawker said, "Arab men treat women poorly and with disrespect, we're going to let these people go and have new faces coming in."

45. Bakro never received any verbal or written warnings regarding his job performance. In fact, Bakro had continually received positive evaluations from his supervisors prior to his termination in or around October 2010.

46. Bakro excelled beyond the minimum requirements in food costs and labor control that were set by both John and Alex Anthraper. He also regularly received high numbers on his audits and always passed inspections. However, on October 23, 2010, Bakro was terminated without any prior warning due to alleged "poor performance."

47.     Rather than adhere to their own progressive discipline policy, Defendants terminated Bakro without any verbal or written warning regarding any incident of alleged "poor performance."

48.     Defendants' discriminatory animus towards Bakro was a pretext for Bakro's termination.

49.     Bakro's termination was based on his national origin and religion.

50.     After Bakro was unjustifiably terminated, he was denied unemployment due to Defendants' actions.  Bakro requested statements from his former employees and co-workers to assist him in his appeal for unemployment insurance benefits.

51.     In a determination dated November 19, 2010 granting Bakro unemployment insurance benefits, the Hearing Officer affirmed this determination on appeal noting "insufficient evidence of misconduct connected with the work," and found that Bakro was entitled to receive unemployment insurance benefits.

52.     While speaking with his former IHOP employees and co-workers, Bakro learned that Hawker had been approaching these employees in order to obtain from them false statements about Bakro.  Employees of IHOP #1465 informed Bakro that Hawker requested that they write false statements about Bakro in order to justify Bakro's termination.

*Additional Facts in Support of All Plaintiffs' Claims*

53.     On or around February 18, 2011, Plaintiffs Bakro and Adam filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of national origin and religion.  Plaintiffs Chamseddine and Saleh provided aggrieved party statements in support of the Charges of Discrimination filed by Plaintiffs Bakro and Adam.  Plaintiffs Chamseddine and Saleh later filed their own Charges of Discrimination with the EEOC in or around May of 2011.

54.     Upon information and belief, John and Alex Anthraper have intentionally refused to provide neutral references to potential employers in retaliation for Plaintiffs filing Charges of Discrimination with the EEOC.

55.     For instance, Plaintiff Chamseddine has been applying for work since his termination from IHOP.  In or around mid-November of 2011, he applied for a position at Taco Cabana, and listed John Anthraper as his immediate supervisor at his former job.  John Anthraper was called by hiring personnel from Taco Cabana.  John Anthraper refused to provide a reference for Chamseddine.

56.     In a phone conversation between Plaintiff Bakro and John Anthraper, John Anthraper stated, "Tell [Plaintiff] Chamseddine" not to apply to IHOP because he will never be hired by IHOP."

## CAUSES OF ACTION

### Title VII

57.      Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

58.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") as Defendants have engaged in the practice of discrimination and retaliation against the Plaintiffs named herein who have asserted such claims.

59.     Plaintiffs' requests for relief are set forth below.

### Section 1981

60.     Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

61. The conduct alleged herein violates Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq.* and the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.* ("Section 1981") as the Defendants have engaged in the practice of discrimination and retaliation against the Plaintiffs named herein who have asserted such claims.

62. Plaintiffs' requests for relief are set forth below.

## Tex. Labor Code § 21.051

63. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

64. The conduct alleged herein violates Section 21.051 of the Texas Labor Code as the Defendants have engaged in the practice of discrimination and against the Plaintiffs named herein who have asserted such claims.

65. Plaintiffs' requests for relief are set forth below

## Tex. Labor Code § 21.055

66. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

67. The conduct alleged herein violates Section 21.055 of the Texas Labor Code as the Defendants have engaged in the practice of retaliation against the Plaintiffs named herein who have asserted such claims.

68. Plaintiffs' requests for relief are set forth below.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

- Preliminary and permanent injunctions against the Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

- A judgment declaring that the practices complained of herein are unlawful and in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq.*; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; Tex. Labor Code § 21.051; and Tex. Labor Code § 21.055

- Granting an order restraining Defendants from any retaliation in any form against Plaintiffs for participation in this litigation;

- Injunctive relief, including, but not limited to, training on the subject of employment discrimination for all Anthraper Investment and IHOP employees, diversity training for all Anthraper Investment and IHOP Managers and supervisors conducted by reputable outside vendors, and consistent implementation and documentation of progressive discipline;

- All damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits Plaintiffs would have received but for Defendants' discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

- Front pay to the Plaintiffs until such time as they can be placed into the same position, title and grade they would now be employed but for Defendants' discriminatory practices;

- Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional conduct;

- Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

- Pre-judgment and post-judgment interest, as provided by law; and

- Such other and further relief this Court finds necessary and proper.

Respectfully submitted,

_____
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@dpelaw.com
Stefanie T. Scott
Texas State Bar No. 24061617
sscott@dpelaw.com
**DiNovo Price Ellwanger & Hardy LLP**
400 South Zang Boulevard, Suite 1202
Dallas, Texas 75208
(214) 948-3334 (phone)
(214) 853-9410 (fax)

James A. Vagnini
Robert M. Valli, Jr.
Sara W. Kane
Deborah Rubin
**Valli Kane & Vagnini, LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)

**ATTORNEYS FOR PLAINTIFFS**

**ORIGINAL COMPLAINT**